IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

CYNTHIA GRAY                                                                                          PLAINTIFF

v.                                             3:05CV00065-WRW

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA                                                                                           DEFENDANT

## ORDER

Pending is Defendant's Motion for Summary Judgment (Doc. No. 10) and Plaintiff's Motion for Determination of Applicable Law (Doc. No. 15). For the reasons stated below, Plaintiff is directed to respond to Defendant's Motion for Summary Judgment.

Plaintiff filed a Complaint[1] alleging that Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA").[2] Based on Plaintiff's Complaint, the Court issued an ERISA scheduling order, and [3] in keeping with the order, Defendant filed a Motion for Summary Judgment.[4] Instead of filing a Response to the Motion for Summary Judgment, Plaintiff filed the present motion arguing that ERISA is not applicable, and that ERISA allegations arose from Defendant's Answer. Plaintiff argues that because the employee welfare benefit plan at issue falls under the Department of

---

[1]Doc. No. 2 filed April 15, 2005 (Plaintiff seeks review of Defendant's decision to deny her claim for long term disability ("LTD") benefits under a long term disability plan ("Plan") issued by Defendant to Plaintiff's former employer, American Greetings Corporation ("AG")).

[2]29 U.S.C. § 1001, *et seq*.

[3]Doc. No. 8.

[4]Doc. No. 10.

1

Labor's "safe harbor" regulations, it is exempt from ERISA. Plaintiff now argues her Complaint alleged "state law claims of breach of contract and bad faith."[5] This argument is fallacious.

Plaintiff brought this action in federal court based on federal question jurisdiction. Nowhere in the Complaint does Plaintiff mention state law causes of action. Plaintiff has made no attempt to amend her pleadings to raise state law causes of action. Moreover, had Plaintiff brought this action under state law causes of action, she would have had to assert diversity jurisdiction.[6] Although Plaintiff pleads that she is a resident of Arkansas and that Defendant is a foreign corporation, she fails to plead the appropriate amount in controversy.[7] Therefore, there must be a federal question; otherwise, the case would have to be dismissed for lack of jurisdiction.

Defendant argues that Plaintiff should be judicially estopped from taking an inconsistent position from that raised in her Complaint. The doctrine of judicial estoppel specifically prohibits a party from taking inconsistent positions in the same or related litigation.[8] Judicial estoppel is a discretionary, equitable doctrine "that prevents a litigant from perverting the judicial process by, after urging and prevailing on a particular position in one litigation, urging a contrary position in a subsequent proceeding-or at a later phase of the same proceeding-against one who relied on the earlier

---

[5]Doc. No. 15.

[6]28 U.S.C.A. § 1332 (The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

[7]Doc. No. 2 (Plaintiff demands . . . an amount in excess of thirty-five thousand dollars ($35,000.00)).

[8]*See Wyldes v. Hundley*, 69 F.3d 247, 251 n. 5 (8th Cir. 1995), cert. denied, 517 U.S. 1172 (1996) (*quoting Morris v. California*, 966 F.2d 448, 452 (9th Cir.1991)).

position."[9] The Supreme Court has identified three non-exclusive factors for courts to consider when determining whether to apply judicial estoppel:

> (1) the party's later position must be clearly inconsistent with the earlier position, (2) the party must have succeeded in persuading a court to adopt the earlier position in the earlier proceeding, and (3) the courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[10]

These factors are easily met in the present matter. First, Plaintiff's argument that she pled state law causes of action and did not allege that her claim was controlled by ERISA is in direct conflict with the plain language of her Complaint. The Court adopted her position as evidenced by the ERISA scheduling order sent to the parties. Finally, Defense Counsel, believing the action was governed by ERISA, expended time and its client's resources defending an ERISA action.

Ignoring all the procedural arguments, ERISA controls this action based on the relationship between Plaintiff's employer, AG, and Defendant. ERISA defines an "employee welfare benefit plan" as:

> . . . any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .[11]

Whether ERISA applies to a particular plan is a question of both law and fact.[12]

---

[9]*Digital Angel Corp. v. Datamars, Inc.*, No. Civ. 04-4544, 2006 WL 1425465 (D. Minn. May 22, 2006).

[10]*Id.* (*citing New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).

[11]29 U.S.C. § 1002(1).

[12]*Bonestroo v. Continental Life and Accident Co.,* 79 F. Supp.2d 1041, 1046 (N.D. Iowa 1999) (*citing Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994) (explaining

For an employee benefit plan to be governed by ERISA, it must be "established or maintained" by an employer.[13] However, the Department of Labor instituted a safe harbor regulation exempting those employers who maintain a neutral or uninvolved relationship to the employee welfare benefit plans.[14] This regulation provides in pertinent part:

> . . . an employee welfare benefit plan shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which: (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.[15]

All four of the "safe harbor" provisions must be satisfied for an employer to avoid ERISA.[16]

Generally, courts consider employer endorsement of a plan to have occurred if "an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the program's availability but had exercised control over it or made it appear to be part and parcel of the company's own benefit package."[17] However, "[a]s long as the employer merely advises employees of the availability of the plan, accepts payroll deductions, passes them on

---

that the existence of an ERISA plan is a mixed question of fact and law)).

[13] See 29 U.S.C. § 1002(1).

[14] 29 U.S.C. § 1135.

[15] 29 C.F.R. § 2510.3-1(j).

[16] *Merrick v. Northwestern*, supra.

[17] *Merrick v. Northwestern*, 2001 WL 34152095, 10 (*quoting Johnson v. Watts Regulator Co.*, 63 F.3d 1123, 1135 (1st Cir. 1995)).

to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program under the regulation."[18]

Defendant argues that an AG employee could reasonably conclude that the Plan is part of a benefit arrangement established and maintained by AG. Defendant supports its contentions by listing the following connections. First, the cover page of the LTD Plan, which displays AG's logo, Defendant argues suggests sponsorship.[19] Next, the Group Insurance Contract and the Plan state that the contract holder is AG, not Plaintiff.[20] The "Application to the Group Contract" lists "AG" as the "applicant," not Plaintiff.[21]

Defendant next cites to AG's "Benefits by Design" Summary Plan Description ("SPD") wherein the AG logo is again prominently displayed.[22] The first paragraph of the SPD states,

> [t]his booklet explaining the main features of the American Greetings Corporation Income Security Plans - which are part of the Benefits by Design Flexible Benefits Program in effect as of January 1, 1998 - is a summary plan description, as defined by the Employee Retirement Income Security Act of 1974 (ERISA).[23]

A close look at the SPD reveals that the insurer [Defendant] determines whether an employee meets the disability requirements; however, AG determines the eligibility requirements for AG employees

---

[18] *Merrick v. Northwestern*, 2001 WL 34152095, 10 (*quoting Johnson*, 63 F.3d at 1133).

[19] Doc. No. 9-3, p. 6.

[20] *Id*. at p. 7.

[21] Doc. No. 9-2, p. 9.

[22] Doc. No. 20-3, p.1 (At the time AG printed the SPD, Liberty Life Assurance Company of Boson provided the LTD benefits described therein; however, AG switched to Prudential for LTD coverage before Plaintiff stopped working or made and LTD claim).

[23] *Id*. at p. 2.

interested in LTD benefits.[24] The SPD states that its plans "are considered welfare benefit plans . . . under the Employee Retirement Income Security Act of 1974."[25] AG is identified as the Plan Administrator and Sponsor.[26] AG is also the agent for service of process.[27] The concluding page of the SPD is a synopsis of the employees' rights under ERISA.[28]

Taking all the above into account, Defendant argues that a "neutral employer" would not be the Plan Administrator, Plan Sponsor, and Agent for Service of Process. The Ninth Circuit has held that the designation of employer as plan administrator does not conclusively establish that a plan falls within ERISA if actions in that respect are merely ministerial or ancillary to other activities within the safe harbor.[29] The Sixth Circuit in *Thompson v. American Home Assur. Co.*, however, held that an employer endorsement has occurred if there is a factual showing on the record of substantial employer involvement in the creation or administration of the plan such as playing an active role in either determining whether employees will be eligible for coverage or negotiating terms of policy or benefits.[30] The *Thompson* Court also held that where an employers is named as the plan administrator, a finding of endorsement may be appropriate.[31]

---

[24]*Id*. at p. 24.

[25]*Id*. at p. 37.

[26]*Id*. at p. 38.

[27]*Id*.

[28]*Id*. at p. 39.

[29]*Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1122 (9th Cir. 1998).

[30]*Thompson v. American Home Assur. Co.*, 95 F.3d 429 (6th Cir. 1996).

[31]*Id*.

In *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir. 1991), the United States Court of Appeals for the Fifth Circuit held that where the employer distributed a booklet, embossed with its logo, to all employees which encouraged them to give the policy "careful consideration" as it could be a "valuable supplement to your existing coverage," and which referred to the plan as "our plan," and where the employer employed a full-time employee benefits administrator, who accepted claims forms from employees and submitted them to the insurer, the employer had endorsed the plan.

But, in *Brundage-Peterson v. Compcare Health Servs. Ins. Corp.*,[32] the Seventh Circuit held "[A]n employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enter in it is outside the safe harbor created by the Department of Labor regulation."[33]

The Eighth Circuit has held that "[t]he pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme . . . [e.g.] an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the

---

[32]*Brundage-Peterson v. Compcare Health Servs. Ins. Corp.*, 877 F.2d 509 (7th Cir. 1989); *see also Crull v. GEM Ins. Co.*, 58 F.3d 1386 (9th Cir. 1995) (ERISA plan existed where employer paid premiums and was named as administrator); *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410 (4th Cir. 1993) (ERISA plan existed where employer determined benefits, negotiated terms of coverage, and paid premiums); *see also Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1213-14 (11th Cir. 1999) (finding endorsement where employer did "a lot more" than merely permit insurer to publicize; employer also picked the insurer, decided on key terms such as portability and amount of coverage, deemed certain employees ineligible to participate, incorporated the policy terms into the self-described summary plan description in its cafeteria plan, and retained the power to alter compensation reduction for tax purposes); *Robinson v. Linomaz*, 58 F.3d 365 (8th Cir. 1995) (finding ERISA plan where group policy purchased by employer, no employee eligible for coverage under group policy purchased by employer unless he or she was an active full-time employee, and coverage would terminate if the employee ceased to be an active full-time employee).

[33]*Id*. at 511.

appropriate criteria."[34] Plaintiff's efforts to diminish AG's involvement with the Plan by arguing that it was purely ministerial is unconvincing considering the level of involvement AG has in the Plan. AG determines which employees are eligible for benefits, which benefits they can obtain, and controls the date eligibility ends.[35] This level of involvement cannot be said to be "neutral." The law and facts support a conclusion that ERISA controls.

Whether Defendant's decision to deny benefits will be given a *de novo* review or an "abuse of discretion" review will be addressed when the Court consider the pending Motion for Summary Judgment. The parties have sufficiently argued which standard of review they believe is appropriate; therefore, it need not be re-addressed. Plaintiff is ordered to respond to Defendant's Motion for Summary Judgment by 5:00 p.m. Friday July 21, 2006.

IT IS SO ORDERED this 11th day of July, 2006.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[34]*Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 257 (8th Cir. 1994).

[35]Doc. No. 20-3, P. 18-19; *see Bonestroo v. Continental Life and Accident Co.*, 79 F. Supp. 2d 1041, 1048 (N.D. Iowa 1999) (holding that an employer "endorsed" a group insurance plan because it "determined which employees were eligible for coverage under the policy and also dictated the benefits an employee could obtain").